LAND, J.
Plaintiff sued to enforce an alleged sale of cypress timber, amounting to 3,719,761 feet, at $6.50 per' M, board measure, making a total of $24,178.44.
Defendant excepted that the petition disclosed no cause of right of action. This exception was sustained, and the. suit was dismissed. The plaintiff has appealed.
Act No. 188 of 1904 declares that standing timber shall remain an immovable when separated in ownership, and shall be subject to all the laws of the state relating to immovables. Hence an agreement to sell standing timber must be in writing. Civil Code, arts. 2439, 2440, 2462. Plaintiff’s counsel concede that a sale of standing timber cannot be proven by parol evidence, but contend that certain letters annexed to and made part of the petition furnish sufficient written evidence to prove the alleged sale.
These letters furnish no evidence of the alleged original agreement to sell and to buy the cypress timber. The first letter of date August 6, 1912, was written by J. P. Kemp-er, a surveyor, to T. C. Lawless,- who was vice president of defendant' company.
The first paragraph refers to a letter from C. D. Kemper to J. P. Kemper, which was not annexed to the petition, relative to a “deal” between C. D. Kemper and T. C. Lawless, for the sale and purchase of cypress and túpelo on the Arlington tract at $6.50 and $1 per M, respectively. The writer then proceeds to state that he understood from C. D. Kemper that a joint estimate of the- timber was to be made by himself representing C. D. Kemper and Wm. Gardner representing T. C. Lawless, and suggests that the specifications of the estimate be written up, so that there would be no misunderstanding.
The next day T. C. Lawless replied as follows:
“Answering your letter of the 6th, will say that the agreement I made with Mr. C. D. Kemper, in regard to measuring the Arlington timber is as follows: * * * Mr. Gardner will be ready next Wednesday to do this work.”
The next letter of date September 5, 1912, from C. D. Kemper to T. C. Lawless, reads as follows:
“Referring to the cypress and túpelo gum on the. Baker property, which I sold you, and which was to be estimated jointly by your Mr. Gardner and Mr. J. P. Kemper under specifications as outlined in your letter of August 7th, to Mr. J. P. Kemper of New Orleans, beg to say that I now have report of Mr. Kemper of the total number of feet found, and am ready to sign the act of sale, and make delivery upon this basis. Please advise me when you will be ready to complete this deal.”
T. C. Lawless, on September 10, 1912, replied as follows:
“Your price of $6.50 per M ft. for your timber on Aldington plantation I think is all right, but do not know if the estimate will be the same, and I reserve the right to accept it or reject it if I do not think it is correct. If you have the time would like for you to come down and bring what you have with you and I will go over it and will'decide what I will do.”
These letters show that there was an agreement that the timber should be measured by two surveyors, one representing each party, but they do not show that Lawless bound himself to accept their measurements and calculations as final and conclusive. On the contrary in his letter o'f September 10, 1912, Lawless reserved the right to accept or to reject the estimate of the surveyors if he did not think it was correct.
After considering the letters, the learned judge below said:
“The plaintiff concludes that because Mr. Lawless did not reply to his letters and deny having bought the property, he consented, but such is not the case. A written agreement such as the law requires for the sale of immovables cannot *819 be implied. It must actually exist and be visible to the eye.
“The court is satisfied from the perusal of these letters that Mr. Lawless never intended to purchase any timber until after the estimate had been made and after he had examined it and found it satisfactory. Certainly he had _ never agreed in writing to purchase a given thing at a given price or- given terms.”
There were verbal negotiations between the parties as to the sale of the cypress and gum timber on certain tracts of swamp land. The only written evidence before us, which is binding on the defendant, is contained in the two letters of Lawless. The first letter was in reply to one from Surveyor Kemper, and the solitary admission contained in it refers to an agreement in regard to the measurement of the timber.
The second letter was written to the plaintiff, the opening clause reading, “Your price of $6.50 per M ft. for your timber on Arlington plantation, I think is all right,” precludes the supposition of a previous binding agreement as to the price of the cypress timber. It is to be noted that this letter does not refer to the gum timber, and that plain- ' tiff’s petition contains no reference to such timber, although his letter to Lawless states that the deal included both cypress and gum.
It is evident that the plaintiff eliminated the gum timber from his demand, because it was not referred to in Lawless’ letter to him.
The second letter, taken as a whole, does not bind Lawless either as to the price, or the measurement, but leaves both subject to future adjustment.
It seems to us that the correspondence as a whole suggests merely negotiations for the sale of a large body of cypress and gum timber. Plaintiff offered this timber on certain terms. The parties agreed to have the timber measured and estimated. A sale cannot be predicated on such a preliminary agreement. The judge a quo says:
“Mr. Lawless simply states the agreement be had with reference to measuring the timber. In this it seems to the court he was but following a custom common to timber men of this country —to have the timber estimated and then decide whether or not to buy.
“Often the number of trees on a tract of land, its accessibility to pull boats, the size of the trees, and their length are of more importance than the quantity of the wood.”
Lawless was the vice president of one of the largest lumber companies in this state, yet he carried on the negotiations in his own name, with the evident intention of buying fpr his company if a satisfactory agreement could be reached. The correspondence does not show that a sale was consummated.
Judgment affirmed.
PROVOSTY, J., being absent on account of illness, took no part.